UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHRISTIAN LOPES,                                                      Plaintiff,

v.                                            Civil Action No. 3:23-cv-503-DJH

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT et al.,                            Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Christian Lopes sued Defendants Louisville-Jefferson County Metro Government (Metro), Louisville Metro Department of Corrections (LMDC) Director Lt. Col. Jerry Collins in his individual and official capacity, and various LMDC officers (the Defendant Officers) in their official and individual capacities,[1] alleging assault and battery, negligence, and negligent supervision and training under Kentucky law, as well as violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Docket No. 1-2) Metro moves for dismissal of the § 1983 claims against it for failure to state a claim and for dismissal of all state claims against it on sovereign-immunity grounds. (D.N. 8) The remaining defendants move for dismissal of the official-capacity claims against them. (D.N. 5; D.N. 7) After careful consideration, the Court will grant in part and deny in part Metro's motion and grant the remaining defendants' motions for the reasons set forth below.

**I.**     **BACKGROUND**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a Rule 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir.

---

[1] The following LMDC officers are named in their individual and official capacities: Bryan Trowell, Brian Kenney, Andrew Cardwell, and Michel Ray. (D.N. 1-2)

1

2020). Lopes alleges that on September 1, 2022, he attended a probation hearing in Jefferson County where he was ordered to serve seven days of home incarceration for failure to provide an address change and corresponding report. (D.N. 1-2, PageID.12 ¶ 16–17) After the hearing ended, LMDC officers transferred Lopes to LMDC's booking area to be processed. (*Id.*, PageID.13 ¶ 20) Once transferred to the LMDC booking area, Lopes asked LMDC officers about the home-incarceration process. (*Id.*, PageID.13 ¶ 21) Officers Trowell and Cardwell then approached Lopes in the booking area, and as he rose to meet them, Trowell "grab[bed] his arm." (*Id.*, PageID.13 ¶ 23) When Lopes began to "back[] away" from the officers, Cardwell "rushed" Lopes and pinned him against the back row of a set of chairs. (*Id.*, PageID.13 ¶¶ 24–25) While Lopes remained "pinned" against the chairs by Cardwell, Trowell placed Lopes in "a rear neck chokehold" and used his body weight to swing Lopes onto the ground. (*Id.*, PageID.13 ¶ 26) Once Lopes was on the ground, Officers Ray and Kenney arrived and "kne[lt] down" on Lopes's body while Trowell continued to execute a rear neck chokehold, leaving Lopes "unable to move" and in pain. (*Id.*, PageID.14 ¶¶ 28–29) Despite one or more officers "ordering Officer Trowell multiple time[s] to release [Lopes]" from the chokehold, Trowell did not immediately do so. (*Id.*, PageID.14 ¶ 30; *see id.*, PageID.13–15 ¶¶ 26–35) Next, while Lopes remained pinned to the ground, the Defendant Officers "took turns" with their closed fists to deliver "at least eight" violent blows to Lopes's face and body. (*Id.*, PageID.14 ¶ 31; *see id.*, PageID.14–15 ¶¶ 31–34) The blows "were delivered with such a force that, from the impact of the punches, Mr. Lopes'[s] head would move from one direction to another causing physical injury to Mr. Lopes." (*Id.*, PageID.14 ¶ 32) Officer Ray, in particular, "pushed another officer off" Lopes's body and "reposition[ed] himself to an optim[al] position" to punch Lopes with his full strength at least four times "in a very strong and vigorous manner." (*Id.*, PageID.14–15 ¶¶ 33–34)

After this incident, the Defendant Officers handcuffed Lopes and escorted him to a cell. (*Id.*, PageID.15 ¶ 35) Once Lopes was inside, he asked the Defendant Officers why he had been beaten. (*Id.*, PageID.15 ¶ 36) In response, the Defendant Officers "pushed" Lopes, who was still handcuffed, against the brick cell wall and "bent him over and threw him [headfirst]" into the cell's corner. (*Id.*, PageID.15 ¶ 37) The Defendant Officers then lifted Lopes's legs off the ground, forcing his head to hit the cell wall again, before "slamm[ing]" Lopes to the cell floor and leaving him "immobile and helpless." (*Id.*, PageID.15 ¶¶ 38–39)

Lopes alleges that LMDC officers routinely engage in excessive and unlawful force against persons in their charge. (*Id.*, PageID.16 ¶ 44) According to Lopes, Metro and Defendant Collins have "knowingly allowed [LMDC] officers to ignore" excessive-force guidelines by failing to properly investigate excessive-force incidents and declining to enforce city policy. (*Id.*, PageID.16 ¶ 46; *see id.*, PageID.16–18 ¶¶ 44–53) Lopes claims that these longstanding practices have created a "custom of excessive force" within LMDC (*id.*, PageID.16 ¶ 44), citing an investigative report commissioned by Metro (the GAR Report) that found "dangerous" customs and practices regarding LMDC use of force alongside systemic "poor policy, training and supervision" of LMDC correctional officers.[2] (*Id.*, PageID.18 ¶ 53 (quoting D.N. 1-2, PageID.40)) The GAR Report concluded that "bad management, substandard practices, and a 'disturbing' tolerance of poor performance and misconduct by staff have created safety risks for the people incarcerated" within LMDC. (*Id.* (quoting D.N. 1-2, PageID.32)) Lopes alleges that LMDC's

---

[2] Metro argues that the GAR Report must be ignored because "[t]wo years passed since the report was issued until the events alleged in the Complaint occurred" and Lopes does not allege that "Metro took no corrective action thereafter." (D.N. 8, PageID.102) This argument is not properly considered at the motion-to-dismiss stage, where the well-pleaded allegations in Lopes's complaint must be taken as true. *See Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

3

systemic indifference to excessive force is further demonstrated by several incidents involving excessive force by LMDC officers since 2018. (*Id.*, PageID.16–18 ¶¶ 48–52)

In his complaint, Lopes alleges violations of state and federal law across six counts. (*Id.*, PageID.19–28 ¶¶ 54–100) The first three counts assert federal claims pursuant to 42 U.S.C. § 1983: Count I asserts a *Monell* custom-of-tolerance claim against Metro and Collins; Count II alleges Fourth, Eighth, and Fourteenth Amendment violations by the Defendant Officers; and Count III asserts a *Monell* failure-to-train/failure-to-supervise claim against Metro and Collins. (*Id.*, PageID.19–25 ¶¶ 54–79) The final three counts assert state-law claims: Count IV alleges negligent supervision and training by Collins; Count V alleges negligence by all defendants[3]; and Count VI alleges assault and battery by the Defendant Officers. (*Id.*, PageID.25–28 ¶¶ 80–100)

Metro moves for dismissal of all claims against it pursuant to Rule 12(b)(6), invoking sovereign immunity as to all state-law claims and contending that any federal claims fail as a matter of law. (D.N 8) The Defendant Officers and Collins move to dismiss the official-capacity claims against them on the grounds that those claims are duplicative. (D.N. 5; D.N. 7) The Court addresses each argument below.

---

[3] The heading of Count V states that the claim is asserted "[a]gainst" Collins only (D.N. 1-2, PageID.26), but Count V alleges facts that would be relevant only if the Defendant Officers and Metro were also the subject of Lopes's negligence claim. For example, Lopes alleges that the "Defendant Officers[] and [Collins] owed a duty of care to Mr. Lopes" (*id.*, PageID.26 ¶ 89) and that "[Collins] and the Defendant Officers breached this duty of care." (*Id.*, PageID.26 ¶ 90) Similarly, Lopes asserts that "[Metro] owed a duty of care . . . ." (*Id.*, PageID.26–27 ¶ 91) Metro's motion to dismiss notes that Lopes's state-law claims "do not appear to be against" Metro but argues for sovereign immunity "[t]o the extent they are." (D.N. 8, PageID.103) The remaining defendants have not addressed the issue. (*See generally* D.N. 5; D.N. 7) As such, the Court interprets Lopes's negligence claim as pleaded against all defendants.

## II.     ANALYSIS

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true.  *Id.*  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" will not withstand a motion to dismiss.  *Id.* at 679. When considering a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett*, 561 F.3d at 488 (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

Generally, courts may consider only the factual allegations in the pleadings when deciding a motion to dismiss. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).  If matters outside the pleadings are presented on a motion to dismiss and not expressly excluded by the Court, the Court must treat the motion as a motion for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d); *see also Bates*, 958 F.3d at 483.  There are a few exceptions, however.  Courts may consider documents attached to the complaint, documents attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein," and public records without converting the motion to dismiss to a motion for summary judgment.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).  Because

the GAR Report is attached to Lopes's complaint, the Court may consider the report when deciding the defendants' motions to dismiss. *See id.*

**A.     Louisville Metro**

Lopes asserts two § 1983 claims against Metro, alleging a custom of tolerance regarding excessive force (Count I) and a failure to adequately train and supervise LMDC officers as to the proper use of force (Count III). (D.N. 1-2, PageID.19–25 ¶¶ 54–62, 69–79) Lopes also asserts various state-law claims, including negligence against all defendants. (*Id.*, PageID.25–28 ¶¶ 80–100) Metro contends that the § 1983 claims are factually insufficient and that it is entitled to sovereign immunity on the state-law claims to the extent such claims are asserted against Metro. (D.N. 8, PageID.100–04)

**1.     Federal Claims**

**a.     Custom of Tolerance**

Lopes alleges that Metro has tolerated a "custom of excessive force" within LMDC by failing to enforce city policies regarding excessive force, to sufficiently investigate and document instances of force, and to discipline LMDC officers who use excessive force. (D.N. 1-2, PageID.19–21 ¶¶ 54–62) Lopes further alleges a custom of tolerance by reference to documented incidents of excessive force by LMDC officers over the past several years. (*Id.*) Metro argues that Lopes's pleadings lack adequate factual allegations. (D.N. 8, PageID.100–03)

To state a § 1983 municipal-liability claim, "[t]he pleadings must set forth the specific policy or custom allegedly adopted by the government." *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 498 (W.D. Ky. 2021). It is well established that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Because a municipality may be held liable only for its own illegal acts, the pleadings "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Municipal liability "rest[s] on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff; '[r]espondeat superior or vicarious liability will not attach under § 1983.'" *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 489 (6th Cir. 2020) (quoting *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005)). In the *Monell* context, "'[o]fficial policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). Thus,

> [u]nder *Monell* and its progeny, there are four ways a plaintiff can demonstrate a policy or custom that could allow for municipal liability:
>
> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final [decision-making] authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Lopes concedes that Metro has an official policy governing and prohibiting the use of excessive force by LMDC officers. (D.N. 1-2, PageID.16 ¶ 45) He nevertheless contends that

7

Metro employs an informal custom of ignoring these policies and allowing LMDC officers to engage in excessive force with impunity. (*Id.*, PageID.16–21 ¶¶ 44–62) The Supreme Court has explained the distinction between formal policies and informal customs in the *Monell* context:

> [l]ocating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Brown*, 520 U.S. at 403–04 (citation omitted). An informal custom may thus be actionable so long as it is sufficiently "extensive as to still be attributable to the municipality as a whole." *Lipman*, 974 F.3d at 748. In such cases, "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). When a plaintiff's custom-of-tolerance claim is based on the inadequacy of official investigations, municipal knowledge and acquiescence must be demonstrated by "a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478.

To state a § 1983 claim based on a municipal policy or custom, Lopes must "identify the policy, connect the policy to [Metro] itself and show that the particular injury was incurred because of the execution of that policy." *See Milby v. Underwood*, No. 3:23-CV-49-RGJ, 2024 WL 345525, at *5 (W.D. Ky. Jan. 30, 2024) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Thus, to survive Metro's motion to dismiss, "it is sufficient for [Lopes] to plausibly allege an unlawful policy or custom and a direct causal link to the harm." *Id.* (citing *Daugherty v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 524 (W.D. Ky. 2020)).

Lopes sufficiently alleges a custom of tolerance here. First, Lopes identifies a custom of excessive force within LMDC. (D.N. 1-2, PageID.19–21 ¶¶ 54–62) To support this allegation,

8

Lopes points to multiple alleged incidents of excessive force by LMDC officers within the past several years. (D.N. 1-2, PageID.16–18 ¶¶ 44–52) Moreover, as set out in the complaint, the GAR Report identifies "a 'disturbing' tolerance of poor performance and misconduct" by LMDC officers, including "[c]ustoms and practices regarding the use of force [which are] dangerous and [create] significant liability exposure" due to "[p]oor policy, training and supervision" within LMDC. (D.N. 1-2, PageID.18 ¶ 53 (quoting D.N. 1-2, PageID.32, 40))  Second, Lopes has sufficiently "connect[ed] the policy" to Metro.  *See Milby*, No. 3:23-CV-49-RGJ, 2024 WL 345525, at *5.  Lopes notes that Metro itself commissioned the GAR Report (D.N. 1-2, PageID.18 ¶ 53), and therefore the report's findings make plausible "proof of the knowledge of [Metro] policymaking officials and their acquiescence in the established practice" of excessive force within LMDC.  *City of Memphis*, 361 F.3d at 902.  Moreover, the GAR Report identifies a pattern of inadequate investigation of excessive force within LMDC, noting the lack of any "tracking or system to review" excessive-force incidents.  (D.N. 1-2, PageID.40)  Such allegations are sufficient to plead "a pattern of inadequately investigating similar claims" at the motion-to-dismiss stage. *Burgess*, 735 F.3d at 478.  Thus, because Lopes has identified multiple alleged incidents of excessive force by LMDC officers within the past several years (D.N. 1-2, PageID.16–18 ¶¶ 44–52) as well as the findings of the GAR report commissioned by Metro, he has made plausible an informal custom that is sufficiently "extensive as to still be attributable to [Metro] as a whole." *Lipman*, 974 F.3d at 748.  Finally, since Lopes alleges that his injuries were caused by LMDC officers using excessive force (D.N. 1-2, PageID.12–18 ¶¶ 15–53), the general pattern of excessive force within LMDC as identified in the GAR Report is sufficient to show causation at this stage of the proceedings. *See Milby*, No. 3:23-CV-49-RGJ, 2024 WL 345525, at *5.  Metro's motion to dismiss will therefore be denied as to the custom-of-tolerance claim.

b.      **Failure to Train/Supervise**

"A municipality may be liable under an inadequate training theory 'where the risks from its decision not to train its officers were so obvious as to constitute deliberate indifference to the rights of citizens.'" *Troutman*, 979 F.3d at 489 (quoting *Gray*, 399 F.3d at 617).  Lopes alleges that Metro, "[o]ut of deliberate indifference and/or unofficial custom and policy, . . . failed to adequately train and/or supervise" the Defendant Officers as to the proper use of force.  (D.N. 1-2, PageID.23 ¶ 71)  Metro maintains that Lopes's pleadings lack sufficient factual allegations to support this claim.  (D.N. 8, PageID.100–03)

To state a claim of failure to train or failure to supervise, a plaintiff must sufficiently allege that "(1) the [c]ity's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the city's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."  *Sistrunk*, 545 F. Supp. 3d at 498–99 (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019)).  "The focus 'must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform.'" *Stucker v. Louisville Metro Gov't*, No. 3:20-CV-809-GNS-CHL, 2023 WL 2293355, at *10 (W.D. Ky. Feb. 28, 2023) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) (vacated on other grounds).

Lopes sufficiently alleges inadequate training here.  As set out in the complaint, the GAR Report identifies systemic "'poor policy, training and supervision'" of LMDC officers, as well as a "'disturbing' tolerance of poor performance and misconduct by [LMDC] staff."  (D.N. 1-2, PageID.18 ¶ 53 (quoting D.N. 1-2, PageID.32, 40))  Lopes's description of previous instances of excessive force utilized by LMDC officers, as well as his description of the force used against him

10

by the Defendant Officers, supports that finding. (*Id.*, PageID.16–18 ¶¶ 44–52; *id.*, PageID.12–15 ¶¶ 15–41)

To adequately allege deliberate indifference, the complaint must identify either (1) "prior instances of unconstitutional conduct demonstrating that [Metro] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury" or (2) "[a] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Daugherty*, 495 F. Supp. 3d at 524 (quoting *Fisher v. Harden*, 298 F.3d 837, 849 (6th Cir. 2005)). Lopes first alleges deliberate indifference by reference to multiple documented instances of excessive force by LMDC officers within the past several years. (D.N. 1-2, PageID.16–18 ¶¶ 44–52) Moreover, as set out in the complaint, the GAR Report concluded that LMDC "customs and practices regarding the use of force and restraints are dangerous and [create] significant liability exposure, especially if there was a civil Monell claim." (D.N. 1-2, PageID.18 ¶ 53 (quoting D.N. 1-2, PageID.40)) Similarly, the GAR Report specifically identified "poor policy, training and supervision as the trifecta of failures . . . [present] in the LMDC." (*Id.*) Lopes notes that Metro itself commissioned the GAR Report and identifies multiple media reports of previous instances of excessive force by LMDC officers. (*Id.*, PageID.16–18 ¶¶ 44–53). Such allegations make it plausible that "[Metro] has ignored [this] history of abuse" despite its knowledge. *Daugherty*, 495 F. Supp. 3d at 524 (quoting *Fisher*, 298 F.3d at 849). In sum, Lopes sufficiently alleges deliberate indifference.

The complaint likewise sufficiently alleges that "the inadequacy was closely related to or actually caused the injury." *Id.* at 524 (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). Lopes recounts LMDC's pattern of violence against

11

individuals in its care and the GAR Report's conclusion that the "'disturbing' tolerance of poor performance and misconduct by [LMDC] staff . . . create[s] safety risks for the people incarcerated there." (D.N. 1-2, PageID.16–18 ¶¶ 44–53 (quoting D.N. 1-2, PageID.32))  Since Lopes alleges that his injuries were caused by LMDC officers using excessive force (*id.*, PageID.12–18 ¶¶ 15–53), the general deficiencies in LMDC's training and supervision practices relating to force as identified in the GAR Report are sufficient to show causation at this stage of the proceedings. *See Milby*, No. 3:23-CV-49-RGJ, 2024 WL 345525, at *5–7.  Metro's motion to dismiss will therefore be denied as to the failure-to-train claim.

        **2.**      **State Claims**

Metro also asserts sovereign immunity from Lopes's state-law claims. (D.N. 8, PageID.103–04)  Lopes did not address this argument in his response. (*See generally* D.N. 12) "[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) (quoting *Rouse v. Caruso*, No. 06-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)).

In any event, the Court agrees that Metro is entitled to sovereign immunity for Lopes's state-law claims. "Unlike federal courts, Kentucky courts recognize that 'a county government is cloaked with sovereign immunity.'" *Scherzinger v. Bolton*, No. 3:11-CV-11-H, 2013 WL 3166163, at *13 (W.D. Ky. June 19, 2013) (citing *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003)). Metro "is a consolidated local government . . . [a]nd the Kentucky General Assembly has granted to consolidated local governments 'the same sovereign immunity granted [to] counties.'" *Thieneman v. Smith*, No. 3:17-cv-292-DJH, 2018 WL 1522357, at *4 (W.D. Ky.

Mar. 26, 2018) (quoting Ky. Rev. Stat. § 67C.101(2)(e); *see also Reyes v. Salsman*, No. 3:15-CV-587-GNS-DW, 2016 WL 247582, at *2 (W.D. Ky. Jan. 20, 2016)).  Metro is therefore entitled to sovereign immunity for Lopes's state-law claims, and those claims must be dismissed to the extent they were asserted against Metro.

**B.      Defendant Officers and Collins**

Lopes claims that Collins is liable in his official capacity under § 1983 for the constitutional violations alleged in Counts I and III.  (D.N. 1-2, PageID.19–25 ¶¶ 54–62, 69–79)  Additionally, Lopes claims that the Defendant Officers are liable in their official capacities under § 1983 for violations of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments (Count II).  (*Id.*, PageID.21–22 ¶¶ 63–68)  The Defendant Officers and Collins argue that Lopes's official-capacity claims against them are "simply another way of pleading claims against Metro" and are therefore "duplicative of those against Metro."  (D.N. 5, PageID.76; D.N. 7, PageID.95)  Lopes did not respond to this argument (*see generally* D.N. 12) and has therefore conceded the issue.  *See Degolia*, 381 F. Supp. 3d at 759–60.

Because "[s]uing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself," *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006), official-capacity claims against individual officers are "superfluous" when the governmental entity is also named.  *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) (affirming dismissal of official-capacity claims against individual agent of entity where entity was also a named defendant in § 1983 suit).  The Court must therefore dismiss Lopes's official-capacity claims against the Defendant Officers and Collins.

13

### III.    CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Defendant Metro's motion to dismiss Lopes's complaint (D.N. 8) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** to the extent that Lopes's state-law claims in Counts IV, V, and VI were asserted against Metro.  It is **DENIED** as to Counts I and III.  Counts I and III will proceed against Metro.

(2)    The Defendant Officers' and Collins's partial motions to dismiss (D.N. 5; D.N. 7) are **GRANTED**.  All official-capacity claims and Count II are **DISMISSED** as to these defendants.  Counts IV and V will proceed against Collins in his personal capacity, and Counts V and VII will proceed against the Defendant Officers in their personal capacities.

(3)    Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Edwards for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues.  Judge Edwards is further authorized to conduct a settlement conference in this matter at any time.

September 17, 2024

David J. Hale, Judge
United States District Court